UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

SCOTT DAMONE, VINCENT PERRONE, STEVEN AUZ, DAVID ORINGER, ANTHONY CERULLI, CHRIS WILLIAMSON, PETER MASTRANDREA, NEIL O'BRIEN, and DAVID FENNELL,

                       Plaintiffs,

v.

TEAMSTERS LOCAL 804, DELIVERY AND WAREHOUSE EMPLOYEES, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, EDWEEN VILLALTA, in his individual and official capacity, AND JOHN PICCINICH, in his individual and official capacity,

                       Defendants.

**MEMORANDUM AND ORDER**

18-CV-4059 (LDH) (ST)

---

LASHANN DEARCY HALL, United States District Judge:

Plaintiffs Peter Mastrandrea, Neil O'Brien, and David Fennell bring the instant action against Defendants Teamsters Local 804 ("Local 804"), Delivery and Warehouse Employees, International Brotherhood of Teamsters ("International Teamsters"), Edween Villalta, and John Piccinich pursuant to the Labor Management Reporting and Disclosure Act (the "LMRDA") for violation of their rights to freedom of speech and assembly; unlawful imposition of discipline; violation of their equal rights; and violation of their rights to due process.[1] Plaintiffs move pursuant to Rule 56 of the Federal Rules of Civil Procedure for partial summary judgment.

**UNDISPUTED FACTS**[2]

---

[1] Plaintiffs voluntarily dismissed their claims against Villalta and Piccinich in their individual capacities. (ECF No. 40.) On May 29, 2019, Plaintiffs Damone, Perrone, Auz, Oringer, Cerulli, and Williamson voluntarily dismissed all of their claims. (ECF No. 43.)

[2] Unless otherwise indicated, the undisputed facts are taken from the parties' statements of material facts pursuant to Local Rule 56.1 and annexed exhibits. To the extent any fact is disputed, it is so indicated. Facts that are not

1

I. **The Parties**

Local 804 is a labor organization as that term is defined in Section 3(i) of the LMRDA and is a local affiliate of International Teamsters. (Pls.' Stmt. of Material Facts Pursuant to Local Civ. R. 56.1 ("Pls.' 56.1") ¶ 14, ECF No. 60-1.) Together, Plaintiffs are members of a political faction within Local 804. (*Id*. ¶ 1.) This faction comprised the leadership of Local 804 from 2009 until 2015. (*Id*. ¶ 1.) Until December 31, 2015, Mastrandrea served as vice president; O'Brien served as a trustee; and Fennell served as recording secretary. (*Id*. ¶¶ 7, 10, 13.) During this period, Sylvester served as President, and Plaintiffs were each members of Sylvester's executive board. (*Id*.)

In December 2015, Local 804 held elections for officers, trustees, and business agents. (*Id*. ¶ 29.) Villalta and his slate of candidates defeated the incumbent Sylvester Administration and took office on January 1, 2016. (*Id*. ¶ 31.) Defendants Villalta and Piccinich assumed the position of president and secretary-treasurer, respectively. (*Id*. ¶¶ 15, 18.) The other members of Villalta's administration who took office on January 1 were Danny Montalvo, Danny Betancourt, Dwight Philip, Rick Gomez, Walter Weidtman. (*Id*. ¶ 32.) Montalvo served as vice president, Betancourt served as the recording secretary, Philip, Weidtman, and Gomez served as trustees. (*Id*. ¶¶ 33–37.) Shocker and Forcelli were elected as business agents during the Villalta Administration. (*Id*. ¶¶ 38–39.)

II. **President Sylvester's Decision to Pay Accrued Vacation**

---

contradicted by citations to admissible evidence are deemed admitted. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted."). Defendants did not file a counter 56.1 statement because they concede that there is no dispute of material fact. (*See* ECF No. 57.) Accordingly, all facts in Plaintiffs' 56.1 statement are deemed admitted.

2

Local 804's president is its principal officer and has the authority to direct and supervise business agents and pay the salaries of Local 804's officers and employees. (*Id.* ¶¶ 20–21.) The president has the sole authority to interpret the union's bylaws and to determine circumstances that warrant a cash payment to employees and officers for their accrued and unused vacation time. (*Id.* ¶ 22, 46.) The bylaws provide that officers and employees may carry over up to three weeks of accrued but unused vacation time per year. (*Id.* ¶ 42.) Except in extraordinary circumstances, as determined by the principal officer and reported to the membership, no officer or employee of Local 804 may receive a cash payment in lieu of vacation. (*Id.* ¶ 43.)

On or about December 17, 2015, then-President Sylvester authorized payment to Plaintiffs for their accrued and unused vacation time, totaling approximately $197,000. (*Id.* ¶ 45; Oct. 25, 2019 Decl. Benjamin Dictor ("Dictor Decl."), Ex. Z at Tr. 11:25–12:5, ECF No. 60-28.) Plaintiffs received checks signed by President Sylvester and Secretary-Treasurer Reynolds on or about December 30, 2015. (Pls.' 56.1 ¶ 55.) Sylvester did not report the vacation wage payments to the Local 804 membership. (*Id.* ¶ 4.) However, the payout was consistent with the practice of prior executive boards. (*Id.* ¶ 54.)

## IV.  The 2016 International Convention Election

Every five years International Teamsters holds a convention, at which delegates vote on changes to the constitution and elect officers and trustees. (*Id.* ¶¶ 60–61.) In or about February 2016, former-President Sylvester, former-Secretary-Treasurer Reynolds, and other former members of Sylvester's executive board announced that they would run for election on the same slate to serve as delegates at the upcoming convention, scheduled for April 2016. (*Id.* ¶¶ 64, 66.) The same month, Villalta, Piccinich, and most other members of Villalta's administration announced that they would run in the delegate election on an opposing slate. (*Id.* ¶ 65.)

As part of their campaign, members of the Villalta Administration distributed two flyers to Local 804 members referencing the accrued and unused vacation payouts to Plaintiffs. (*Id*. ¶ 67.) One of the flyers included a headline stating, "Tim Sylvester Handed Out Close To $200,000 In Checks To His Board and Staff As He Walked Out The Door at Local 804," and "Tens of thousands of dollars from our treasury. [sic] Without the 'report to the membership' required by Local 804 bylaws. (We don't remember any notice – do you. [sic] But we're looking.)." (*Id*. ¶ 68.) The same flyer also said that Sylvester wanted to become Secretary-Treasurer of the International Teamsters because "[i]t seems our local union treasury wasn't big enough" and "Hasn't Local 804 done enough for Tim?" (*Id*.) The second flyer stated that "Tim Sylvester and His E-Board Pocketed $154,000 On Their Way Out the Door" and featured a photo of Sylvester dressed as a cowboy and holding a piggy bank with money sticking out of it on which the words "Vegas or BUST" were printed. (*Id*. ¶ 69.) The second flyer also stated "[H]e and his friends could use some of that $154,000 to fly to Vegas on their own dime." (*Id*. ¶ 69.)

On April 28, 2016, the ballots for the delegate election were counted, and Sylvester's slate prevailed winning all delegate and alternate delegate spots. (*Id*. ¶ 70.) No member of Villalta's administration was elected delegate or alternate delegate. (*Id*. ¶ 71.)

**V.**     **Villalta's Investigation into the Vacation Payments**

On May 12, 2016, after losing the delegate election, the Villalta Administration hired Ronald Acevedo to investigate Sylvester Administration officers and business agents, including Plaintiffs, in connection with former-President Sylvester's decision to authorize payment of their accrued and unused vacation. (*Id*. ¶ 73.) Walter Kane, Local 804's outside counsel, also assisted in the investigation. (*See id*. ¶ 75.)

4

Throughout the investigation, Villalta, Piccinich, Acevedo, and Kane kept members of Villalta's administration "up-to-date" on the status and findings of the investigation. (*Id*. ¶¶ 75, 77–89.) On June 6, 2016, Acevedo emailed Piccinich and informed him that he planned to direct Plaintiffs to appear for questioning. (*Id*. ¶ 76; Dictor Decl., Ex. R, ECF No. 60-20.) Acevedo wrote that members of the administration should be prepared to "charge them . . . if they fail to appear and explain the vacation pay issue." (Dictor Decl. Ex. R.) On July 9, 2016, Acevedo wrote to Kane concerning the status of the investigation, noting that "Sylvester is running for office and we should use that for leverage to get him to appear to make a statement." (Pls.' 56.1 ¶ 83.) Then, on July 20, 2016, Acevedo emailed Villalta, Piccinich, and Kane the following:

> I think that Fennell should be charged for conversion (stealing the minutes) and bringing reproach upon the [International Teamsters] by failing to cooperate in the investigation. I would charge him with taking the vacation pay too. If you are going charge him, I suggest that you allow me to send demand letters to the entire old E-Board directing them to appear for questioning. If they don't appear, they should be charged too. It is time to increase the pressure and let them know that they cannot refuse to cooperate in an investigation without consequences. This will all boil down to the original issue—whether they violated the Bylaws by taking the vacation payout. Thoughts?

(Dictor Decl. Ex. X, ECF No. 60-26.) Approximately one week later, on July 28, 2016, a telephone conference was conducted with Kane, Villalta, Montalvo, Piccinich, Bentacourt, and Avecedo where they discussed the investigation. (Pls.' 56.1 ¶ 90.)

On December 10, 2016, Acevedo emailed Kane copies of draft charges against Plaintiffs that Acevedo had drafted. (*Id*. ¶ 95.) In turn, on December 15, 2016, Kane sent an email to Villalta, Montalvo, Piccinich, Bentacourt, and Acevedo attaching a draft of the charges against Plaintiffs and directing Villalta, Montalvo, Piccinich, Bentacourt, and Acevedo to review the charges and ask any questions. (*Id*. ¶ 97.) On January 6, 2017, Kane emailed Villalta, Piccinich, Montalvo, and Betancourt a draft letter that Kane had authored on behalf of Villalta

5

advising the membership that "[l]ast week, I [Villalta] received charges from Secretary Treasurer John Piccinich with regard to the possible embezzlement of $197,872 by the former administration of Local 804." (*Id*. ¶ 102.) Four days later, on January 10, 2017, Kane sent a copy of the draft charges against Reynold, Sylvester, and Fennell to Villalta, Montalvo, and Betancourt for input. (*Id*. ¶ 104.)

On January 12, 2017, Piccinich filed internal union charges against Plaintiffs alleging violations of various provisions of the International Teamster Constitution and Local 804 Bylaws for facilitating and accepting a payout of unused vacation days and for failing to cooperate in Acevedo's investigation. (*Id*. ¶ 105.) In the Winter 2016–2017 news pamphlet distributed to Local 804 members, Villalta wrote that his administration had "discovered violations [of the International Teamster Constitution and Local 804 Bylaws] by members of the previous executive board" and that "[t]hey have been afforded the chance to explain and defend themselves, but no one is above the law." (*Id*. ¶ 99.)

Local 804 conducted a hearing on the charges against Fennell on February 3, 2017. (*Id*. ¶ 107.) The hearing panel consisted entirely of members of Villalta's executive board, including Villalta, Montalvo, Betancourt, Philip, Weidtman, and Shocker. (*Id*. ¶¶ 107–08.) Piccinich presented the charges against Fennell with assistance from Forcelli. (*Id*. ¶ 109.) Piccinich was not permitted to participate in any of the deliberations or determinations of guilt or the resulting penalties. (*Id*. ¶ 110.) On March 17, 2017, Local 804 conducted hearings on charges against Mastrandrea and O'Brien. (*Id*. ¶ 113.) The hearing panel again consisted of Villalta, Montalvo, Betancourt, Philip, Weidtman, and Shocker. (*Id*.) Piccinich presented the charges against Mastrandrea and O'Brien with assistance from Forcelli. (*Id*. ¶ 114.) Plaintiffs asked the panel

6

members to recuse themselves on the basis that the members had prejudged Plaintiffs' guilt. (*Id.* ¶ 115.) The panel members refused. (*Id.*)

In separate undated decisions, the hearing panel sustained the charges against Plaintiffs. (*Id.* ¶ 121.) Plaintiffs, along with other former members of Sylvester's executive board, were found jointly and severally liable for $197,872.66, totaling the full amount of the vacation payments, and they were each ordered to make full restitution. (*Id.*) In addition, these individuals were each barred from holding office or being employed by Local 804 or any International Teamsters affiliate for the later of a four-year period or until the imposed financial obligations were satisfied and were barred from membership and participation in union affairs for the later of a two-year period or until the imposed financial obligations were satisfied. (*Id.*)

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the [movants are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movants bear the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Once the movants meet their initial burden, the non-movants may defeat summary judgment only by adducing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). The Court is to believe the evidence of the non-movants and draw all justifiable inferences in their favor, *Anderson*, 477 U.S. at 255, but the non-movants must still do more than

merely assert conclusions that are unsupported by arguments or facts, *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996).

## DISCUSSION

"The LMRDA was enacted to encourage democratic self-governance in unions and to curb widespread abuses and corruption among union leadership." *Maddalone v. Local 17, United Bhd. of Carpenters and Joiners of Am.*, 152 F.3d 178, 183 (2d Cir. 1998). To that end, Section 101(a)(5) provides that "[n]o member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues" unless such member has been "served with written specific charges; [] given a reasonable time to prepare his defense; [and] afforded a full and fair hearing." 29 U.S.C. § 411(a)(5). A full and fair hearing "need not incorporate the same procedural protections found in criminal proceedings . . . but 'the basic principles of due process' must be in place." *Gillen v. Int'l Bhd. of Teamsters*, 341 F. App'x 728, 730 (2d Cir. 2009) (quoting *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 385 (2d Cir. 2001)). In determining whether a hearing comports with due process, courts have considered whether the deciding tribunal exhibited a high probability of actual bias and whether the tribunal's members prejudged the guilt of the accused. *See Sawyer v. Am. Fed'n of Gov't Employees*, 96-CV-7599 (TPG), 1998 WL 307055, at *4 (S.D.N.Y. June 11, 1998) (examining whether political opponent of union official, in playing a significant role in investigating and deciding charges brought against union official, created an unacceptable risk of partiality and bias), *aff'd sub nom. Sawyer v. Am. Fed'n of Gov't Employees*, AFL-CIO, 180 F.3d 31 (2d Cir. 1999); *Perry v. Int'l Longshoremen's Ass'n, AFL-CIO*, 638 F. Supp. 1441, 1448 (S.D.N.Y. 1986) ("This inquiry has expanded beyond these facial indicia of procedural fairness to include a determination of whether the members of the tribunal prejudged the guilt of the accused and

8

whether the discipline was merely a pretext for general political retaliation or retaliation for a member's exercise of protected Title I rights.") (citing *Goodman v. Laborers' International Union of North America, supra*, 742 F.2d 780 (3d Cir. 1984)).

Plaintiffs argue that the composition of the hearing panel alone fundamentally undermines basic due process. (Pls.' Mem. L. Supp. Mot Summ. J. ("Pls.' Mem.") 3, ECF No. 60-44.) There is no dispute that the hearing panel that adjudicated the charges against Plaintiffs consisted entirely of members of Villalta's executive board who had ordered and participated in the investigation, including Villalta, Montalvo, Betancourt, Philip, Weidtman, and Shocker. (Pls.' 56.1 ¶¶ 107–08, 113.) These are the same individuals who defeated Plaintiffs in the December 2015 election, ousting Plaintiffs from their positions. (*Id.* ¶¶ 31–39.) These are also the same individuals against whom Plaintiffs later prevailed in the 2016 delegate election. (*Id.* ¶¶ 70–71.) In other words, the panelists were the political rivals of Plaintiffs not once, but twice. Nonetheless, Defendants counter that the composition of the panels by itself is not determinative. (Defs.' Opp'n Mot. Summ. J. ("Defs.' Opp'n") 3-4, ECF No. 61.) That may be true. However, while Plaintiffs place great significance on the make-up of the panels, it is not the only evidence before the Court demonstrating a high probability of actual bias.

As Plaintiffs note, members of the panels: (1) were kept up-to-date on the status and findings of the investigation; (2) were consulted by Kane and Acevedo on the drafting of the charges against Plaintiffs; (3) participated in the drafting of public statements concerning the charges prior to the hearings wherein conclusions were made concerning the allegations against Plaintiffs; (4) and participated in a telephone conference concerning the charges prior to their drafting and filing. (Pls.' Mem 3 (citing Pls.' 56.1. ¶¶ 75–100).) In addition, Plaintiffs were more than once the focus of public criticism from the members of the panels. During the

9

December 2015 election, Villalta's campaign distributed two flyers to Local 804 members referencing the accrued and unused vacation payouts. (*Id.* ¶ 67.)  And, in the Winter 2016–2017 news pamphlet distributed to Local 804 members, Villalta blasted Plaintiffs for what he called "violations [of the International Teamsters Constitution and Local 804 Bylaws]." (*Id.* ¶ 99.)  Thus, contrary to Defendants' contention, Plaintiffs' evidence amounts to more than "[m]erely pointing out the identities of the Executive Board members[.]" (Defs.' Opp'n 4.)

This case is not unlike *Wildberger v. Am. Fed'n of Gov't Employees, AFL-CIO*, relied on by both Plaintiffs and Defendants.  In *Wildberger*, a national union president initiated an investigation into the local union president, which culminated in a disciplinary proceeding. *Wildberger v. Am. Fed'n of Gov't Employees, AFL-CIO*, 86 F.3d 1188, 1190 (D.C. Cir. 1996).  The proceeding was conducted by a committee appointed by the national president. *Id*. at 1191.  Moreover, removal of the local president was subject to the national president's final approval. *Id*.  On several occasions prior to the hearing, the local president publicly criticized the national president and accused him of wrongdoing. *Id*. 1194.  The national president's supporters opposed the local president's bid to unseat the national president. *Id*. 1194.  The local president brought suit, alleging that his removal violated the LMRDA, because, *inter alia*, the national president, his political opponent, initiated the investigation against him and appointed a trial committee consisting entirely of the national president's political supporters. *Id.* at 1190, 1192–93.  The court noted that "[w]hen combined with the undisputed evidence that [the national president] was repeatedly the focus of [the local president's] criticism and that [the local president] was at one time [the national president's] political opponent . . . we can no longer assume that these procedures guaranteed [the local president] a 'full and fair hearing.'" *Id*. at 1196.  Accordingly, the court held that the national president's use of a disciplinary procedure in

10

which he initiated the investigation, determined probable cause, and served as the final adjudicator posed a "sufficiently high risk of bias" to violate the requirements of the LMRDA. *Id*. at 1190.  The same conclusion is warranted here.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for partial summary judgement is GRANTED.  The discipline imposed on Plaintiffs is void and the matter is remanded for a new hearing consistent with 29 U.S.C. § 411(a)(5).  *See* 29 U.S.C. § 412.

                SO ORDERED.

Dated: Brooklyn, New York          /s/ LDH
      November 30, 2020            L<small>A</small>SHANN D<small>E</small>ARCY HALL
                                              United States District Judge